UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| City of Perry, Iowa, on behalf of itself and all others similar situated, | Court File No._____ |
| Plaintiff, | |
| v. | |
| Procter & Gamble Company; Kimberly-Clark Corporation; Nice-Pak Products, Inc.; Professional Disposables International, Inc.; Tufco Technologies Inc.; and Rockline Industries, | **CLASS ACTION COMPLAINT** **Jury Trial Demanded** |
| Defendants. | |

Plaintiff City of Perry, Iowa ("Plaintiff" or "Perry") brings this action individually and as a putative class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of all others similarly situated. Plaintiff, by and through its undersigned attorneys, based on its individual experiences, the independent investigation of counsel, and information and belief, alleges as follows:

## INTRODUCTION

1.      This class action is brought against Defendants Procter & Gamble Company ("P&G"), Kimberly-Clark Corporation ("Kimberly-Clark"), Nice-Pak Products, Inc. ("Nice-Pak"), Professional Disposables International, Inc. ("PDI"), Tufco Technologies Inc. ("Tufco"), and Rockline Industries ("Rockline") (collectively referred to as "Defendants"), to recover for the harm caused by Defendants' unfair practices associated with the design, testing, manufacturing, marketing, distribution, and/or sale of allegedly flushable bathroom wipes. Together, Defendants have the vast majority of the flushable wipes market. As the key

participants in the flushable wipes market, Defendants have had access to a plethora of information about the harm their wipes cause to plumbing systems.

2.      "Flushable wipes" include all wipe products designed, distributed, marketed, and advertised by the Defendants as suitable or able to be flushed down a toilet without causing harm to plumbing, sewer, and septic systems. Flushable wipes are functionally interchangeable, fungible goods.

3.      Contrary to the Defendants' representations, these flushable wipes do not degrade after flushing. Rather, the flushable wipes remain intact long enough to pass through private wastewater drain pipes into the municipal sewer line causing clogs and other issues for municipal and county sewer systems, wastewater treatment plants and public buildings, resulting in thousands, if not millions, of dollars in damages.

4.      Despite numerous complaints from state and local sewer authorities both in United States and internationally, Defendants have not removed the false claims regarding the flushability of these wipes.

5.      Defendants know, and have known, of the harm they cause to sewer systems and waste treatment facilities, yet continue to manufacture and promote them as flushable.

6.      Defendants' refusal to act and redress the problems with their alleged flushable wipes makes Fed. R. Civ. P. 23(b)(2) declaratory and equitable relief, including remediation, particularly fitting for this action, as it will alleviate future harm and expense associated with ongoing clean-up of Defendants' flushable wipes. Additionally, under state law, Plaintiff and the putative state sub-class are entitled to certification of a Rule 23(b)(2) to enjoin the Defendants' practices and a (b)(3) class to redress the damages that they have sustained resulting from Defendants' misrepresentations about the flushability and degradability of their wipes.

2

## PARTIES

7.      Plaintiff City of Perry is located in the State of Iowa. Perry has been injured by Defendants' flushable wipes in three different respects.  First, as the owner and operator of two lift stations that pump its wastewater to a treatment facility, Perry has incurred expenses associated with the removal of flushable wipes from its lift stations. Second, Perry oversees and is responsible for its sewer lines. Flushable wipes have repeatedly clogged Perry's sewer lines, and Perry has had to expend significant resources cleaning out the lines**.** Finally, Perry owns buildings within the city, including the Perry Public Library, that have experienced plumbing problems associated with the use of flushable wipes. As the owner of said damaged buildings, Perry was and is reasonably affected by Defendants' advertised flushable wipes.  In sum, Perry has been harmed—and  faces the continuing, ongoing threat of future harm—from Defendants' continued sale and promotion of wipes as "flushable" and "sewer and septic safe."

8.      Defendant P&G is an Ohio corporation with its headquarters located at One Procter & Gamble Plaza, Cincinnati, Ohio. Together with its subsidiaries, it manufactures, distributes, markets, and sells a variety of flushable wipes worldwide, and at all times relevant to this action has done so within this Judicial District. The company operates in four industry-based sectors: (1) Baby, Feminine, and Family Care; (2) Beauty, Hair, and Personal Care; (3) Fabric and Home Care; and (4) Health and Grooming. The Baby, Feminine, and Family Care sector provides facial and bathroom tissue, paper towels, napkins, infant and child wipes, feminine care, and related products including the Always, Bounty, Charmin, Luvs, Pampers, Puffs, and Tampax brands.

9.      Defendant Kimberly-Clark is a Delaware corporation with its principal executive offices located at P.O. Box 619100, Dallas, Texas. Together with its subsidiaries, it

manufactures, distributes, markets, and sells a variety of flushable wipes worldwide, and at all times relevant to this action has done so within this Judicial District. The company operates in three segments: (1) Personal Care; (2) Consumer Tissue; and (3) K-C Professional. The Personal Care segment provides infant and child wipes, feminine care, and related products including the U by Kotex, Poise, Huggies, and Pull-Ups brands. The Consumer Tissue segment provides facial and bathroom tissue, paper towels, napkins, and related products under the Kleenex, Scott, Cottonelle, and Viva brands.

10.     Defendant Nice-Pak is a New York corporation with its corporate headquarters located at Two Nice Pak Park, Orangeburg, New York. Nice-Pak is a global leader in the design, manufacture, marketing, and distribution of branded and private label wet wipe products. Together with its subsidiaries and affiliates, Nice-Pak makes and markets pre-moistened wipes, including baby wipes, antibacterial towelettes, cloths for cleaning lenses and removing makeup, and wipes for surface cleaning and industrial use. Nice-Pak makes flushable wipes under its Nice 'n Clean brand. Nice-Pak also manufactures flushable wipes for private label retailers including Costco, Target, and CVS.

11.     Defendant PDI is a New York Corporation with its headquarters at Two Nice Park, Orangeburg, New York. PDI is an affiliate of Nice-Pak. Together with its subsidiaries and affiliates, PDI develops, manufactures, and distributes brand and retailer brand wet wipes across consumer, healthcare, and foodservice business channels. PDI designs, makes, markets, and sells flushable wipes under its Hygea brand.

12.     Defendant Tufco is a Delaware corporation with its headquarters at 3161 South Ridge Road, Green Bay, Wisconsin. Tufco is a wholly owned subsidiary of Griffin Holdings LLC. Together with its subsidiaries and affiliates, Tufco manufactures a wide variety of

consumer products touting itself as "the largest contract manufacturer of branded wipes in the USA." Tufco offers its private label customers manufacturing and packaging services, including the manufacture and packaging of flushable wipes.

13.     Defendant Rockline is a Wisconsin corporation with its headquarters at 4343 S. Taylor Drive, Sheboygan, Wisconsin. Together with its subsidiaries and affiliates, Rockline designs and manufactures a wide variety of consumer products that are distributed and sold worldwide, and at all times relevant to this action has done so within this Judicial District. According to its website (www.rocklineind.com), Rockline's primary product line is wet wipes, including flushable wipes. Among other product lines offered, Rockline offers "contract manufacturing" for various retailers. Rockline is the contract manufacturer for the Walmart Equate Brand.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because members of the proposed Class are municipalities located in states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Plaintiff because Plaintiff consents to personal jurisdiction in this District. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, and some of the actions giving rise to the Complaint took place in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to these claims occurred in this District, Defendants reside, are found, have their principle place of business, have an agent, or have transacted

substantial business in this District, and Defendants have caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Municipal Sewer and Wastewater Treatment Systems

17.     Wastewater is generated each time an individual turns on a faucet, washes a load of laundry, or flushes a toilet. This wastewater exits a building through a lateral pipe. The lateral pipe runs the length of the property out to the street or rear of the property where it connects to the public sewer system at a pipe called the sewer main.

18.     Sewer mains connect to collectors and trunk lines, all larger pipes that eventually become interceptor sewers, which are the largest pipes in the public sewer system. The wastewater eventually flows into a wastewater treatment plant.

19.     The wastewater generally travels through the pipes due to gravity, but some pipes may require pumps. If the wastewater flows due to gravity, there is less agitation in the water than when it is pushed through with a pump, meaning it is less likely the wipes and other products will break down.

20.     At the sewer, the waste water goes through "pre-treatment," which removes all materials that can be easily collected from the raw sewage before they damage or clog the pumps and sewage lines of primary treatment clarifiers. Objects that are commonly removed during pretreatment include trash, tree limbs, leaves, branches, and other large objects.

21.     The sewage water then passes through a bar screen to remove all large objects like cans, rags, sticks, plastic packets, etc. that are carried in the sewage stream. This is most commonly done with an automated mechanically raked bar screen in modern plants serving large populations, while in smaller or less modern plants, a manually cleaned screen may be used. The

raking action of a mechanical bar screen is typically paced according to the accumulation on the bar screens and/or flow rate. If solids are not removed, they become entrained in pipes and moving parts of the treatment plant, and can cause substantial damage and inefficiency in the process.

22.     As is explained below, the so-called flushable wipes do not degrade like toilet paper. Thus, they ultimately get caught in the bar screen and block the passage of wastewater, causing the system to shut down and requiring their manual removal.

**B.     The Rise of the Flushable Wipe**

23.     The flushable wipes industry, of which Defendants constitute a majority, has experienced exceptional growth in recent years. From 2008 to 2013, the sales of the moist flushable wipes grew 23 percent to $367 million. And some predictions call for the total market to continue to grow at a rate of 12.1% annually—to reach $2.4 billion by 2018.

24.     The flushable wipes market includes pre-moistened wipes that are manufactured, marketed, distributed, and/or sold to consumers as being "flushable," or sewer or septic system safe, when flushed down the toilet.

25.     In order to function properly, flushable wipes must hold up under the pressure of scrubbing *after* being soaked in water and propylene glycol lotion for an extended period of time.[1] The ability of a wipe to hold together when subjected to water is referred to as its "wet strength."

**C.     Flushable Wipes Are Not Flushable**

---

[1]     Public     Enemy     No.     2,     New     York     Magazine,     (available     at http://nymag.com/news/intelligencer/flushable-wipes-2013-10/index1.html) (last visited April 10, 2015).

26. In order to maintain "wet strength," and despite the Defendants' claims otherwise, flushable wipes do ***not*** degrade after flushing. Rather, once in the sewer system, they ultimately wrap around structures within the system, such as filters or pumps, creating clogs and back-ups. In order to clear the clogs, the systems need to be shut down and the wipes manually removed.

27. The Association of Nonwoven Fabrics Industry (known as "INDA") is the powerful trade association representing (and lobbying on behalf of) the non-woven fabric industry, i.e., Defendants. Without real input from the wastewater industry, INDA has developed industry friendly standards a product must pass before it is appropriate for a manufacturer, distributor, or seller to make the claim that the product is flushable: (1) toilet and drainline clearance test; (2) slosh box disintegration test; (3) household pump test; (4) settling test; (5) aerobic biodisintegration/biodegradation tests; (6) anaerobic biodisintegration/biodegradation tests; and (7) municipal sewage pump test.

28. However, wastewater officials say that the tests developed by the INDA do ***not*** simulate conditions in real-life sewer systems.[2] The "slosh box" test, for example, requires that at least one-quarter of a wipe agitated in water be broken into pieces small enough to pass through a small sieve within three hours. But wastewater officials say wipes can reach a pump within a couple of minutes. Moreover, many sewer systems move sewage primarily via gravity and are not nearly as hard on the wipes as the agitation test.

29. In Winter 2014, the Wisconsin Rural Water Association Journal published an article about the havoc so called flushable wipes are wreaking on sewer systems and the testing done by the flushable wipes industry (i.e., INDA) to support their claims.

---

[2] Katherine Shaver, 'Flushable' Personal Wipes Clogging Sewer Systems, Utilities Say, The Washington Post, Sept. 7, 2013 (available at http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging- sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html) (last visited April 10, 2015).

30.     Chris Groh, a wastewater trainer for Wisconsin Rural Water Association, wrote:

If you ever have the time to look at one of these [Flushable Wipes], just try to tear it apart. Pretty hard to do by hand isn't it? If you do get one apart it looks kind of like they are made of a material similar to fishing line. Well, most are made of a type of plastic, they shred into long strings, don't pull apart at all and they don't dissolve.

The code that the manufacturer of these wipes uses basically says that after 3-hours of sloughing around in a collection system, if the material loses 25% of its mass they can call it "flushable." When they test these things they really move and beat the material around for 3 solid hours. Nothing like what you would find in your [sewer] collection system. As operators we know that these wipes will plug pumps, shear apart and the resulting fibers will wrap around impellers or shafts (causing failures). And as they're not biodegradable they have to be removed from the treatment flow at the plant head-works.[3]

31.     Consumer Reports, an independent consumer publication that publishes reviews and comparisons of consumer products, performed its own independent disintegration test on flushable wipes that simulated toilet flushing conditions. A video clip of the test showed that standard toilet paper broke down in about eight seconds, but flushable wipes did not break down after ten minutes and, even more shocking, still did not break down after being placed in a Kitchen Aid mixer for the same period of time.[4]

32.     In 2012, as part of the World of Wipes Conference, Maureen Nunn, Senior Technical Service Specialist from the Dow Chemical Company, gave a presentation on "The Challenges and the Success" for the wipes industry. Ms. Nunn is the primary technical point of contact in the Textiles and Nonwovens area of Dow Adhesives and Functional Materials. Ms. Nunn acknowledged that "[a]s wipe use has increased, the industry has been challenged to

---

[3] Chris Groh, Whatever Goes Down Must Come Up, MRWA Today (Spring 2014) (available at http://www.mrwa.com/PDF/FlushablewipesChrisGrohspring2014.pdf) (last visited April 10, 2015).
[4] See Ed Perratore, Think Twice About Flushing Wet Wipes, Consumer Reports, Dec. 27, 2013, (available at http://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wet- wipes/index.htm) (last visited April 10, 2015).

continually improve product sustainability." Ms. Nunn noted that a key to sustainability is for the industry to "*develop a truly dispersible or 'flushable' wipe*."

33.     Two years later, at the 2014 World of Wipes Conference, Mutombo Muvundamina, Ph.D., a research scientist at H.B. Fuller Company, gave a presentation to the industry on the binding agents and materials used in the so-called flushable wipes. Dr. Muvundamina's presentation recognized that **"**[n]umerous municipalities are alarmed by the high frequency of the clogging of wastewater conveyance systems and damages to pumps in their wastewater treatment facilities. Examinations of the causes of the blockage and damages to equipment point to wipes that are introduced into the wastewater stream as one of the main reasons for damage."

34.     State officials and local sewer authorities have implored the manufacturers and sellers of these purported flushable wipes to remove the flushability claims from their marketing and product packaging because these products are causing damage to sewer infrastructure all over the United States and the world. These efforts have been largely rebuffed by the industry.

35.     According to the National Association of Clean Water Agencies ("NACWA")—a trade association that represents the interests of nearly 300 publicly owned wastewater treatment agencies nationwide—over the past few years cities across the country have incurred hundreds of thousands of dollars in new equipment and maintenance costs to repair damage resulting from flushed wipes, and in some cases even more, including:

(a)     The Orange County Sanitation District spent $2.4 million on new equipment to unclog its pumps.

(b)     The Washington Suburban Sanitary Commission, which handles sewage for the residents of Montgomery and Prince George's Counties in Maryland, spent more than $1 million to install heavy- duty grinders to shred wipes before they reach pumps on the way to the treatment plant. The District's water and sewer agency

says that more than 500 man-hours have been devoted over the past 12 months to removing stuck wipes and repairing broken equipment.

(c)     Aurora Water, in Aurora, Colorado just recently found and removed flushable wipes that caused a clog in a sewer main, which resulted in toilet backups on the entire block serviced by that main pipe. It was the second time in 2014 that wipes were removed from the public sewer system because they created clogs.

(d)     Metro Wastewater Reclamation District in metro Denver has large interceptors that trap wipes and other non-organic debris, costing the district about $100,000 annually to remove the wipes and other debris.

(e)     Flushable wipes clogged a section of the public sewer system in Grand Rapids, Michigan, causing the city to send out mailers to its citizens asking them not to flush any wipes, even those marketed as flushable.

(f)     Over the past five to six years, New York City's Department of Environmental Protection has spent over $18 million removing wipes by hand from its sewer system and machinery at the wastewater treatment plant.

(g)     Raleigh, North Carolina is increasingly dealing with clogged sewer lines, due mainly to wipes, which can stick to the sides of pipes.

(h)     In San Antonio, Texas, crews remove three to five tons of debris per day.

36.     Examples outside the United States are illustrative as well. In Canada, wipes cost treatment plants about $250 million annually in repairs. In 2013, in London, there was a 15-ton, bus-sized clog in a sewer main from wipes and coagulated grease that took three weeks to dislodge and six weeks to repair the damage to the pipes.

37.     Despite Defendants' knowledge of these incidents and the need to reduce wear and tear on the country's sewer systems,[5] they continue to market these wipes as "flushable" and safe for sewer systems. Indeed, when faced with questions about the damage caused to various sewer authorities, Defendant Kimberly-Clark claimed, in a July 2013 newspaper article, that it was "committed to working with the waste-water community" but "if the company labels a product as flushable, it stands by that" and it remains "confident in th[e] claim [of flushability]."[6]

---

[5] *Id.*
[6] http://www.cbc.ca/news/canada/flushable-wipes-clogging-canadian-sewers-waste-water-officials-say-1.2430071

38.     Below are photographs of so called flushable wipes intact after flushing and reaching wastewater treatment facilities.





**D.      Allegations Related to the Named Plaintiff**

39.     Flushable wipes have caused significant problems for Plaintiff, City of Perry. Perry maintains logs that detail its ongoing problems with wipes.

40.     First, flushable wipes generally clog Perry's lift stations. As a result of the repeated clogs, Perry's lift stations have had mechanical damage and Perry has been forced to repeatedly clean the system's lift stations. Perry has also been forced to replace a pump motor, which broke, at least in part, as a result of being clogged with flushable wipes.

41.     Second, flushable wipes have adversely affected Perry's sewage pipes. As a result of flushable wipes, Perry has suffered numerous sewage back-ups and has incurred substantial damages as well.

42.     Finally, flushable wipes have caused damage to buildings owned and operated by Perry.  For example, a pipe in a bathroom of the Perry Public Library was clogged by patrons flushing flushable wipes down the toilet, and Perry incurred costs in clearing the pipe.

43.     Plaintiff believes that if the flushable wipes were designed to degrade, similar to traditional toilet paper, the sewer industry would no longer be faced with the rapid spike in operating and repair expenses caused directly by the alleged flushable wipes. Upon information and belief, Defendants' wipes all contributed to the injuries sustained by Perry.

**E.      Defendants' Flushable Claims**

**P&G Flushable Wipes**

44.     Defendant P&G owns both the Charmin and Pampers lines, including their flushable wipes. The Pampers brand possesses a global market share of 30% and Charmin has 25% of the U.S. market share.

45.     Charmin's website advertises the flushability of their Charmin Freshmates and the product label clearly states "flushable wipes" (see below).



46.     P&G also provides a Clog Safe/Septic Safe money back guarantee for the bath tissue only. This guarantee, however, does not extend to the flushable wipes.

47.     The product name and packaging for the Pampers Kandoo Flushable Wipes state that these are "flushable wipes" (see below).

 

48.     Reviews on the Pampers Kandoo website mention that the wipes are "not so flushable."

### Kimberly-Clark Flushable Wipes

49.     Defendant Kimberly-Clark makes several types of flushable wipes under the Cottonelle brand—Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths, Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E, Cottonelle Fresh Folded Wipes, and Cottonelle Soothing Clean Flushable Moist Wipes with Aloe.

50.     On the Cottonelle website, Defendant Kimberly-Clark markets these products to the public, describing its Cottonelle Fresh Care Flushable Cleansing Cloths as "using a patented dispersible technology, which means that when used as directed they break up after flushing and clear properly maintained toilets, drainlines, sewers, pumps, and septic and municipal treatment systems."

51.     On the Cottonelle website, where it markets these products to the public, in a section titled "About this item," Kimberly-Clark makes the following guarantees or representations: (1) Our Fresh Care Flushable Cleansing Cloths feature SafeFlush Technology™, so they not only offer you a confident clean but also *start to break down immediately after flushing* (emphasis added); and (2) Cottonelle Flushable Cleansing Cloths use a patented dispersible technology that allows them to lose strength and break up after flushing.

52.     The product page on the Cottonelle website also contains a list of Frequently Asked Questions, including "How can I be sure it is safe to flush Cottonelle Flushable Cleansing Cloths?" and "Will Cottonelle Flushable Cleansing Cloths break down in my septic system?" The answers state that the flushability of Kimberly-Clark products is tested according to "trade association guidelines," and that the guideline tests demonstrate that when used as directed, the wipes clear properly maintained toilets, drainlines, sewers, and pumps.

53.     On the product packaging for the Cottonelle Fresh Care Flushable Cleansing Cloths, the phrase "flushable cleansing cloths" is displayed prominently. Also appearing on the front of the product's package is a logo guaranteeing the wipes to be "SEWER AND SEPTIC SAFE" (see below).





54.     On the back of the product packaging for the Cottonelle Fresh Care Flushable Cleansing Cloths, Kimberly-Clark states, represents, and guarantees that "COTTONELLE FRESH CARE Flushable Cleansing Cloths break up after flushing" (see below).





55.    On the product packaging for Cottonelle Fresh Care Flushable Moist Wipes, Kimberly-Clark represents, states, and guarantees, "Safe for sewer and septic systems" and "you can flush Cottonelle Fresh Care wipes with confidence because they break up like toilet paper after flushing." This packaging also displays a circular logo representing, stating, and guaranteeing that this wipe product "BREAKS UP AFTER FLUSHING" (see below).







56.    On the product packaging for the Cottonelle Ultra Comfort Care Flushable Cleansing Cloths the phrase "flushable cleansing cloths" is displayed prominently. Also appearing on the front of the product's package is a logo stating the wipes are manufactured using "SAFE FLUSH TECHNOLOGY," representing to consumers that these wipes "break up after flushing and are sewer and septic safe" (see below).





57.     The side panels on the product packaging for the Cottonelle Ultra Comfort Care Flushable Cleansing Cloths include the SAFE FLUSH TECHNOLOGY logo and a representation, statement and guarantee that "Safe Flush Technology ensures that Cottonelle Ultra Comfort Care Flushable Cleansing Cloths break up after flushing, and are sewer and septic safe" (see below).



**SAFEFLUSH TECHNOLOGY***

SafeFlush Technology*
ensures that Cottonelle®
Ultra ComfortCare*
Flushable Cleansing
Cloths break up after
flushing, and are sewer
and septic safe.

SafeFlush Technology*
garantit que les
débarbouillettes jetables
dans les toilettes
Cottonelle® Ultra
ComfortCare* se
décomposent une fois la
chasse tirée et sont sans
danger pour les égouts et
les fosses septiques.

Alcohol-free / Sans alcool

For best results, flush only
one or two cloths at a time.

Pour de meilleurs résultats,
ne jetez pas plus d'une ou
deux débarbouillettes par
chasse d'eau.

58.     Kimberly-Clark makes several types of flushable wipes under the Scott Naturals brand—Scott Naturals Flushable Moist Wipes, Scott Naturals Flushable Moist Wipes with Aloe Vera, and Scott Naturals Folded Flushable Moist Wipes.

59.     The flushable wipes claim to be "flushable" both in the product name and on the label. The label also has a logo for its SafeFlush Technology™ (see below).



60.     The product webpage plays up the environmental soundness of the product, including "Clean with a conscience," "Scott Naturals Flushable Cleansing Cloths help you get clean and put a green step in your routine," and "The quality is so good your family won't notice the difference. But the environment will."

61.     Kimberly-Clark makes and sells a variety of other flushable wipes, including Pull-Ups Big Kid Flushable Wipes, U by Kotex Refresh Wipes, and Poise Intimate Cleansing Cloths. The Pull-Ups and Kotex product labels and the website pages for these products claim that the wipes are "flushable." In fact, the Pull-Ups website specifically states that the wipes are "sewer

and septic safe and break up quickly after flushing." Poise Intimate Cleansing Cloths also state

on its website that they are "individually wrapped and flushable for on the go convenience."

### Nice-Pak Flushable Wipes

62.     Defendant Nice-Pak designs, makes, markets, and sells flushable wipes under its

Nice 'n Clean brand. The Nice 'n Clean product label is clearly advertised as "flushable" (see

below).



63.     Nice n' Clean's flushable wipes are described as "The Flush Friendly wipe" that

is made with EcoFlush™ technology that makes its wipes "safe for all well maintained sewers

and septic systems."

64.     Nice-Pak also manufactures wipes for Costco's private label, Kirkland Signature

Brand. Kirkland Signature Moist Flushable Wipes are marketed by Defendant Costco. In 2014,

Costco reported global net sales of over $110 billion, of which 25% came from Kirkland

Signature products. Both the product name and the label of Kirkland Signature's Moist Flushable

Wipes state that the wipes are flushable. The label also has an icon stating that the wipes are

"made with EcoFlush™ technology," and states that the product is "safe for well-maintained

sewer & septics."

65.     According to Costco, "New EcoFlush technology uses streams of water to 'entangle' the fibers and then the fibers untangle with agitation common in consumer and municipal sewer systems. This technology means you can feel confident flushing them one wipe at a time."



66.     One of the Frequently Asked Questions on the webpage states, "Are Kirkland Signature Moist Flushable Wipes really flushable?" Costco answers, "Yes, Kirkland Signature™ Moist Flushable Wipes comply with industry guidelines and are designed to ensure that they will pass through a home's well-maintained toilet, pump and drain line without clogging."

67.     Another FAQ addresses the "dos and don'ts" for flushing, and warns customers to only flush one wipe at a time, to ensure there are no tree roots growing into the sewer lines, and to make sure the septic system is well maintained.

68.     When asked how it is possible to know if a wipe is flushable, Costco instructs consumers to "Look for the Do Not Flush logo that is starting to appear on many products that are not flushable or read the directions on the package on how to dispose of properly."

69.     A field study performed in Vancouver, Washington demonstrated the destructive effects of these wipes. After 45 minutes in the sewer system, the Kirkland wipes, which were died red for the purpose of the study, failed to disperse or degrade, as evidenced by the photo below.



70.     Nice-Pak also manufactures and supplies CVS with flushable wipes for CVS' brand flushable wipes. CVS' 2013 Annual Report claims $126.8 billion in net revenues, of this its front store sales/over the counter products was estimated to be a $15 billion market, with 9% market share. CVS's store and proprietary brands accounted for 17.8% of front store sales.

71.     CVS/pharmacy makes, markets, advertises, and sells a house brand of Flushable Cleansing Wipes. Both the product name and label advertise flushability (see below). The webpage states that the wipes "Break[] apart when flushed," and are "safe for sewer and septic systems."



72.     CVS also sells a Total Home by CVS Flushable Moist Wipes Refill (see below). CVS' webpage states the Total Home wipes are comparable to Cottonelle Fresh Care Wipes, "safe for most sewers and septics," and "break[] apart when flushed."



73.     Nice-Pak also manufactures and supplies Target with flushable wipes for Target's Up & Up brand flushable wipes. Target's Up & Up brand Toddler Wipes and its Flushable Moist Wipes product labels state that the wipes are flushable (see below).





**PDI Flushable Wipes**

74.     Defendant PDI designs, manufactures, and sells flushable wipes under its Hygea

brand. The product label clearly states that the wipes are "flushable" (see below). PDI's website

26

describes its Hygea Flushable Personal Cleansing Cloths as a "safe for sewers and septic systems."



### Tufco Flushable Wipes

75.     Defendant Tufco manufactures and packages private label flushable wipes throughout the United States. On its website, Tufco markets itself as "the personal care wipes manufacturer leader" and clearly advertises "flushable" wipes for its consumers.

### Rockline Flushable Wipes

76.     Defendant Rockline designs, manufactures, and supplies private label consumer products, including flushable wipes to retailers throughout the world. Rockline offers contract manufacturing for Walmart, among others retailers. Rockline contracts with Walmart to manufacture and package Walmart's Equate brand of flushable wipes.

77.     On the product packaging for the Equate Fresh Scent Flushable Wipes, the phrase "Flushable Wipes" is displayed prominently. Also appearing on the package is a logo guaranteeing the wipe, "BREAKS APART AFTER FLUSHING" (see below).





78.     On the back of the product packaging for Equate Fresh Scent Flushable Wipes, there are various guarantees and representations that the wipes are "flushable" and safe to be disposed of through a consumer's home plumbing system, including, "Certified Flushable," and "Suitable for Sewer and Septic." Another guarantee or statement appearing on the back of the product packaging states, "Safe for properly maintained sewer & septic" (see below).



79.     Also on the back of the packaging for the Equate Fresh Scent Flushable Wipes is the following guarantee or representation, "Better than dry tissue alone. Contains soothing Aloe & Vitamin E. Equate Flushable Wipes break apart after flushing, reducing the chance for blockages at home and in waste management systems. More than 95% biodegradable and made with 95% renewable resources. Our unique material is gentle on the environment" (see below).



80.     Equate also markets a line of Feminine Wipes, marketed as Flushable, and as comparable to Always Feminine Wipes. Nowhere in the marketing of or on the packaging for Equate flushable wipes have Defendants provided a warning to consumers that flushing these flushable wipes could cause problems to sewer systems.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of itself and all others similarly situated. Plaintiff seeks to represent the following Rule 23(b)(2) and (3) classes initially defined as:

> All entities in the United States that own, manage, or operate wastewater treatment systems (the "Wastewater Operators Class").

> All entities in the United States that own, manage, or operate sewage lines that have been clogged or damaged by flushable wipes (the "Sewage Line Class").

> All entities in the United States that own, manage, or operate Buildings that have experienced plumbing issues based on the use of flushable wipes by its residents, guests and/or visitors (the "Building Owners Class").

> Collectively the Classes are referred to as the "Nationwide Classes."

82.     Plaintiff also seeks to represent the following Iowa State Sub-Classes under Federal Rule of Civil Procedure Rule 23(b)(2) and (3) initially defined as:

> All entities in the State of Iowa that own, manage, or operate wastewater treatment systems (the "Wastewater Operators Sub-Class").

> All entities in the State of Iowa that own, manage, or operate sewage lines that have been clogged or damaged by flushable wipes (the "Sewage Line Sub-Class").

> All entities in the State of Iowa that own, manage, or operate Buildings that have experienced plumbing issues based on the use of flushable wipes by its residents, guests and/or visitors (the "Building Owners Sub-Class").

> Collectively the Sub-Classes are referred to as the "Sub-Classes."

> Excluded from the Nationwide Classes and the Sub- Classes (collectively the "Class") are Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries, any individuals who experienced physical injuries as a result of the defects at issue in this litigation, and the judge and court staff to whom this case is assigned. Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the class should be expanded or otherwise modified.

### Numerosity and Ascertainability

83.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiff is informed and believes that there are hundreds, if not thousands, of municipalities, counties, or other entities both nationwide and in Iowa that have experienced damages caused by flushable wipes. Individual joinder of all Class Members is impracticable.

84.     Each of the Classes is ascertainable because its members can be readily identified using public information. Plaintiff anticipates providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## Predominance and Commonality

85.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class Members. These include, without limitation, the following:

(a)    Whether Defendants' flushable wipes are degradable;

(b)    Whether Defendants' flushable wipes are sewer system safe;

(c)    Whether Defendants knew or reasonably should have known that their flushable wipes were not degradable prior to distributing the wipes as such;

(d)    Whether Defendants have refused to cease marketing their flushable wipes as degradable and sewer system safe in the face of repeated complaints regarding sewer clogs caused by wipes;

(e)    Whether Defendants should be enjoined from marketing their flushable wipes;

(f)    Whether Defendants knew or should have known that their flushable wipes could cause significant damage to wastewater treatment facilities, sewage lines, and plumbing systems;

(g)    Whether Defendants were negligent and/or reckless in their continuous marketing and sale of the flushable wipes after various reports and complaints notified the Defendants of the potential harm; and

(h)     Whether the State Sub-Classes is entitled to damages caused by Defendants' representations that their wipes were flushable, degradable and sewer system safe.

## Typicality

86.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by Defendants. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequate Representation**

87.     Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex class action.

88.     Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiff nor its counsel have interests adverse to those of the Classes.

**Superiority**

89.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for Defendants; and because adjudication with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members, or impair substantially or impede their ability to protect their interests.

90.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

91.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and fact regarding Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

92.     The burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

93.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

94.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

95.     The undersigned counsel for Plaintiff and the Class request that this Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rules of Civil Procedure 23(g). Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class' potential claims, are

experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in this action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment Act**
**28 U.S.C. § 2201 and Fed. R. Civ. P. 57**
**(On Behalf of Nationwide Rule 23(b)(2) Classes)**

96.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

97.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

98.     There is an actual controversy between Defendants and Plaintiff concerning: (1) whether their flushable wipes are sewer system safe; (2) whether their flushable wipes degrade when placed in the sewer system; (3) whether Defendants performed adequate testing to determine whether their wipes were in fact flushable; (4) whether Defendants should be permitted to continue to market and sell their wipes as flushable in the face of ongoing and repeated clogs of sewer systems; and (5) whether Defendants should have to remediate the ongoing clogs in public sewer systems caused by the failure of their "flushable" wipes to degrade and disperse.

99.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

100.    Because Defendants have refused to act, and in the face of ongoing and continuing harm, Plaintiff seeks a declaration that the Defendants' flushable wipes are not in fact flushable, do not degrade, and cause harm to sewer systems. Plaintiff seeks the equitable relief of remediation for the ongoing clogs it continues to endure.

**SECOND CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On Behalf of Nationwide Classes and State Sub-Classes)**

101.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

102.    Plaintiff and members of the Classes are persons as defined under Iowa Code § 554.2318 and substantially similar laws throughout the nation.

103.    Under Iowa Code § 554.2318 and similar statutes nationwide, Defendants created an express warranty with the uniform affirmation on the label that the wipes were "Flushable." Defendants further described the wipes as "degradable" and "sewer and septic system safe." Iowa Code 554.2313

104.    This express warranty was breached by Defendants because the wipes were not "Flushable," "degradable," or "sewer and septic system safe."

105.    This express warranty extends to Plaintiff and members of the State Sub- Classes as a "person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty."

106.    Plaintiff and the Classes could reasonably expect to be affected by the wipes and the breach of Defendants' express warranty that the wipes were "flushable," degradable," or "sewer and septic system safe."

107.    Defendants' flushable wipes do not, in fact, conform to their warranties as flushable, degradable, and septic system safe.

108.    As a direct and foreseeable result of this breach, Plaintiff and the Classes have suffered injury.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
### (On Behalf of Nationwide Classes and State Sub-Classes)

109.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

110.    Plaintiff and members of the Classes are persons.

111.    Defendants are merchants.

112.    Defendants warrant the flushable wipes were merchantable, when they were not. Defendants' flushable wipes do not conform to the promises or affirmations of fact made on the container or label as required under Iowa law. Defendants' flushable wipes are also not fit for the ordinary purposes for which they were to be used because they are not flushable and "conform to the promises or affirmations of fact made on the container or label if any." Iowa Code 554.2314.

113.    In Iowa and in other states throughout the nation, the implied warranty extends to Plaintiff and members of the Classes as a "person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty." Iowa Code § 554.2318

114.    Plaintiff and the Classes, as the operators of sewer system and wastewater treatment facilities, could reasonably expect to be affected by the wipes and the breach of Defendants' express warranty that the wipes were "flushable," degradable," or "sewer and septic system safe."

115.    Defendants' breached these implied warranties because their flushable wipes do not, in fact, conform to their warranties as flushable, degradable, and septic system safe.

116.    As a direct and foreseeable result of this breach, Plaintiff and the State Sub-Classes have suffered injury.

**FOURTH CLAIM FOR RELIEF**
**Breach of Implied Warranty of Fitness for a Particular Purpose**
**(On Behalf of Nationwide Classes and State Sub-Classes)**

117.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

118.    Defendants warrant the flushable wipes were flushable, and therefore suitable to be flushed by the consumer, when they were not. *See* Iowa Code § 554.2315.  Defendants sought to distinguish these wipes as "flushable," degradable," or "sewer and septic system safe."

119.    In Iowa and in other states throughout the nation, this implied warranty extends to Plaintiff and members of the Classes as a "person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty." Iowa Code § 554.2318.

120.    Plaintiff and the Classes, as the operators of sewer system and wastewater treatment facilities, could reasonably expect to be affected by the wipes and the breach of Defendants' express warranty that the wipes were "flushable," degradable," or "sewer and septic system safe."

121.    Defendants' flushable wipes do not, in fact, conform to their warranties as flushable, degradable, and septic system safe.

122.    As a direct and foreseeable result of this breach, Plaintiff and the Classes have suffered injury.

38

**FIFTH CLAIM FOR RELIEF**
**Fraudulent Misrepresentation**
**(On Behalf of Nationwide Classes and State Sub-Classes)**

123.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

124.    Defendants advertised that their products were "flushable," meaning they would not cause damage to plumbing, sewage lines, or wastewater treatment facilities. Defendants also labeled their products as "flushable."

125.    Defendants knew that the flushable wipes were not flushable as advertised and labeled, and intended to deceive consumers by labeling and advertising their wipes as flushable.

126.    Consumers of Defendants' wipes justifiably relied on Defendants' representations that, if flushed, they would not cause damage to plumbing, sewage lines, or wastewater treatment facilities.

127.    The public,the Plaintiff and the Class members were actually deceived by Defendant's misrepresentations. As a proximate result of Defendant's misrepresentations, Plaintiff and the Class members have suffered ascertainable losses, in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**(On Behalf of Nationwide Classes and State Sub-Classes)**

128.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

129.    In the course of their business, Defendants advertised that their products were "flushable," meaning they would not cause damage to plumbing, sewage lines, or wastewater treatment facilities. Defendants also labeled their products as "flushable."

130.    Defendants knew or should have known that the flushable wipes were not flushable and did not degrade as advertised and labeled.

131.    Defendants knew or should have known that wastewater treatment facilities, sewage lines, and buildings throughout the nation had already suffered damage from these products, but Defendants continued to market and sell them as flushable.

132.    Defendants were under a duty to exercise ordinary care to avoid reasonably foreseeable harm to Plaintiff and the Class and knew or should have foreseen with reasonable certainty that Plaintiff and/or the Class would suffer injury and/or monetary damages as set forth herein by using, specifically due to the backup caused by, flushable wipes.

133.    Plaintiffs are informed, believe, and thereupon allege Defendants breached said duty by falsely advertising and labeling their flushable wipes.

134.    Consumers of Defendants' products relied on Defendants' false advertisements and labels.

135.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and the Class members have been, and will continue to be,  damaged as more fully described herein including, but not limited to, blockages, costs of maintenance, repairs and/or replacements, and all reasonable fees, costs, interest and/or expenses associated therewith.  These damages and others are expected to continue until Defendants stop marketing the wipes as flushable.

136.    As a further direct and proximate result of Defendants' negligence, Plaintiffs and the Class have suffered injuries and/or damages in an amount not fully known but believed to be within this jurisdiction.

137.    Plaintiff and the Class will establish the amount of their damages at the time of trial according to proof.

## SEVENTH CLAIM FOR RELIEF
### Nuisance
### (On Behalf of Nationwide Classes and State Sub-Classes)

138.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

139.    Iowa Code Chapter § 657.1 provides in relevant part, "[w]hatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere unreasonably with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance."

140.    Defendants refusal to acknowledge that their flushable wipes are not in fact flushable, do not degrade, and clog the public sewer systems is a nuisance that has damaged Plaintiff's property and business. Specifically, it has damaged Plaintiff and the State Sub-Classes' water treatment facilities, sewage lines, and buildings.

141.    Defendants' conduct has unreasonably interfered with the use, benefit, and enjoyment of Plaintiff and the State Sub-Classes' property.

142.    As a direct and proximate result of Defendants' acts and omissions that knowingly and willfully created the above-described nuisance, Plaintiff and the State Sub-

Classes have suffered injuries from the harm caused to its public sewer system, its wastewater treatment facilities, and its buildings.

## EIGHTH CLAIM FOR RELIEF
### Negligence Per Se For Violation of Iowa Code Chapter 716
### (On Behalf of State Sub-Classes)

143.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

144.   Defendants knew or should have known that the flushable wipes were not properly or adequately designed, tested, marked, labeled, nor represented (including warnings), such that Plaintiff and the Class members have been substantially damaged or injured.

145.   Defendants knew or should have known that wastewater treatment facilities, sewage lines, and buildings throughout the nation had already suffered damages from these products but Defendants continued to market and sell them as flushable.

146.   Defendants were under a statutory duty not to trespass on another's property, including Plaintiff under Iowa Code Chapter 716.

147.   Defendants negligently or recklessly trespassed on Plaintiff's property by allowing and encouraging the disposal of the flushable wipes into Plaintiffs sewage lines and lift stations.

148.   Defendants' negligence includes intentional and/or reckless misrepresentations about the flushable wipes to the public and Plaintiff, which they relied to Plaintiff's and the Class' detriment and damage.

149.   As a direct and proximate result of Defendants' negligence, Plaintiff and the Class members have been, and will continue to be, damaged as more fully described herein including, but not limited to, blockages, costs of maintenance, repair and/or replacement, and all reasonable

fees, costs, interest and/or expenses associated therewith.   These damages and others are expected to continue until Defendants stop marketing the wipes as flushable.

150.    As a further direct and proximate result of Defendants' trespass and negligence per se, Plaintiffs and the Class have suffered injuries and/or damages in an amount not fully known but believed to be within the jurisdiction of this.

Plaintiff and the Class will establish the amount of their damages at the time of trial according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for judgment as follows:

A.    An order certifying the proposed Rule 23(b)(2) and (b)(3) Classes, designating Plaintiff as the named representative of the Classes, and designating the undersigned as Class Counsel;

B.    A declaration that the Defendants' flushable wipes do not degrade and are not sewer safe;

C.    An order enjoining Defendants to desist from further advertising, sale, and distribution of said "flushable wipes";

D.    An order requiring the Defendants to establish a fund to compensate Plaintiff and the Class for the cost associated with ongoing clean-up and removal of flushable wipes from their sewer systems;

E.    An award to Plaintiff and the Rule 23(b)(3) Class members of all available damages allowed for by law, including interest, in an amount to be proven at trial;

F.    An award of attorneys' fees and costs;

G.    An award of pre-judgment and post-judgment interest, as provided by law; and

H.    Leave to amend this Complaint to conform to the evidence produced at trial; and such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial as to all issues triable by a jury.

Dated:  October 13 , 2015            CUNEO GILBERT & LaDUCA, LLP


   /s/Charles LaDuca         
Charles J. LaDuca (3975927)
8120 Woodmont Ave., Suite 810
Bethesda, Maryland 20814
Telephone: 202.789.3960
Facsimile: 202.789.1813
charles@cuneolaw.com

Taylor Asen (5101738)
CUNEO GILBERT & LaDUCA, LLP
16 Court Street, Suite 1012
Brooklyn, New York 11241
Telephone: 202.789.3960
Facsimile: 202.789.1813
tasen@cuneolaw.com

Michael McShane
AUDET & PARTNERS, LLP
711 Van Ness Avenue, Suite 500
San Francisco, California 94102
Telephone: 415.568.2555
Facsimile: 415.568.2556
mmcshane@audetlaw.com

J. Barton Goplerud
HUDSON MALLANEY SHINDLER & ANDERSON PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: 515.223.4567
Facsimile: 515.223.8887
jbgoplerud@hudsonlaw.net


*Attorneys for Plaintiff*