UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/19/2016
```

----------------------------------------------------------------------X
                                      :

CITY OF PERRY, IOWA,                    :
                                      :
                   Plaintiff,         :           15-CV-8051 (JMF)
                                        :
            -v-                          :        OPINION AND ORDER
                                        :
PROCTER & GAMBLE COMPANY, et al.,      :
                                        :
                 Defendants.      :
                                        :
----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff, the city of Perry, Iowa ("Perry" or the "City"), brings this putative class action against six leading manufacturers of so-called "flushable wipes": Procter & Gamble Company ("P&G"), Kimberly-Clark Corporation ("Kimberly-Clark"), Nice-Pak Products, Inc. ("Nice-Pak"), Professional Disposables International, Inc. ("PDI"), Tufco Technologies Inc. ("Tufco"), and Rockline Industries ("Rockline"). Perry alleges that, contrary to Defendants' representations, the wipes are not actually "flushable" because they do not degrade after being flushed down a toilet. Instead, the wipes remain intact, creating clogs in and causing other damage to municipal sewer systems, wastewater treatment plants, and public buildings. Perry contends that it has suffered damages as a result of the harm to its water systems and public buildings, and asserts claims — on behalf of itself and a putative class of similarly situated municipalities — against Defendants for declaratory relief and various state-law causes of action, including breach of warranty, misrepresentation, and nuisance. Defendants now move to dismiss the Complaint pursuant to Rules 8 and 12(b) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

**BACKGROUND**

The following facts, taken from the Complaint, exhibits attached thereto, and statements or documents incorporated into the complaint by reference, are assumed to be true for the purposes of this motion.  *See, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).

Defendants each market and sell "flushable" personal hygiene products, primarily "wipes."  (*See* First Am. Class Action Compl. (Docket No. 78) ("FAC") ¶ 1).  The Complaint defines "flushable wipes" as "all wipe products designed, distributed, marketed, and advertised by the Defendants as suitable or able to be flushed down a toilet without causing harm to plumbing, sewer, and septic systems."  (*Id.* ¶ 2).[1]  Defendants market the wipes, via product labeling and advertisements, as "flushable," able to "break up after flushing," and "sewer and septic safe."  (*See id.* ¶¶ 49-85).  "Flushable" wipes are pre-moistened and, in order to maintain that moisture without breaking down prior to use, they have been engineered to have so-called "wet strength."  (*Id.* ¶¶ 24-25).  Such "wet strength," however, also means that the wipes do not degrade easily (as, for example, toilet paper does), even when subjected to significant force.  (*Id.* ¶¶ 26, 28-31).  As a result, the wipes remain intact as they pass through home plumbing and public sewer systems, causing clogs and other damage.  (*Id.* ¶¶ 33-36).  More specifically, Perry contends that wipes have jammed its water system's lift stations (*id.* ¶ 40), clogged and backed

---

[1]    According to the Complaint, the Association of Nonwoven Fabrics Industry (known as the "INDA"), a "powerful trade association representing (and lobbying on behalf of) the non-woven fabric industry, *i.e.*, Defendants," has standards for what products qualify as "flushable." Perry alleges that the INDA's standards were developed "[w]ithout real input from the wastewater industry," are "industry friendly," and "do *not* simulate conditions in real-life sewer systems."  (FAC ¶¶ 27-28 (emphasis in original)).

up its sewer pipes (*id.* ¶ 41), and clogged pipes in municipal buildings (*id.* ¶ 42).  Flushable wipes have been identified as contributing at least in part to the clogs in each case.  (*See id.* ¶¶ 39-42).  Perry has been unable to identify the manufacturer of any given wipe, but it notes that almost all of the "flushable" wipes available for sale in six large stores in Perry and the surrounding area are manufactured by one of the Defendants.  (*Id.* ¶¶ 43-44).

On October 13, 2015, Perry filed its Complaint in this Court, asserting eight claims for relief under state and federal law.  (Docket No. 1; *see* FAC ¶¶ 110-164).  Perry seeks to represent several classes of similarly situated plaintiffs: nationwide classes comprised of wastewater operators, entities that own or operate sewage lines, and entities that own or operate buildings that have experienced plumbing issues attributable to flushable wipes; and Iowa classes representing the same.  (*See* FAC ¶¶ 95-96).  Notably, this case is far from the only pending legal proceeding relating to whether "flushable" wipes are, in fact, "flushable."  Consumers have filed at least fifteen putative class actions against one or more of the Defendants here (and, in some instances, other parties).  *See Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 42-45 (E.D.N.Y. 2015) (listing cases).  And there is at least one other putative class action, in the District of Minnesota, brought on behalf of municipal plaintiffs, with claims much like those in this case.  *See City of Wy., et al. v. Procter & Gamble Co., et al.*, No. 15-CV-2101 (JRT) (D. Minn.), Docket No. 61 (First Am. Class Action Compl.).[2]  In addition, the Federal Trade Commission ("FTC") is investigating the accuracy of the "flushable" label.  *See Belfiore*, 311 F.R.D. at 45-47; *see also id.* at 79-80 (referring "[t]he issue of an appropriate definition of 'flushable' wipes and related issues" to the FTC and staying the case pending those proceedings).  Among other things,

---

[2]      A motion to dismiss is pending in that court; oral argument was held on May 11, 2016. *See City of Wy.*, No. 15-CV-2101 (JRT) (D. Minn.), Docket Nos. 67, 102, 111.

the FTC filed a formal complaint against Defendant Nice-Pak, and later entered into a consent agreement prohibiting Nice-Pak from marketing products as "flushable" unless they meet certain requirements. *Id.* at 45-47. (*See also* Pl.'s Mem. Law Opp'n Defs.' Mot. To Dismiss First Am. Compl. (Docket No. 105) ("Pl.'s Opp'n") 2 n.2). The FTC has also apparently conducted an informal inquiry with respect P&G's "flushable" products. *See Belfiore*, 311 F.R.D. at 47.

## LEGAL STANDARDS

Defendants move to dismiss pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 8(a) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (holding that a complaint "satisfies the requirements of Rule 8(a) [when] it gives [the defendant] fair notice of the basis for [the plaintiff's] claims"). A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction to hear the case. *See, e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 267 (2010). Moreover, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [a court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "The plaintiff bears the

burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

By contrast, a Rule 12(b)(6) motion calls for the court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). More specifically, the court must distinguish between facts, on the one hand, and "mere conclusory statements" or legal conclusions on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. *Ashcroft*, 556 U.S. at 678-79. The court must then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2008)). A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## DISCUSSION

Defendants move to dismiss Perry's claims on various grounds. First, they contend that all of the City's claims should be dismissed for lack of subject-matter jurisdiction because it does not have standing under Article III of the Constitution. Second, they argue that Perry's pleading violates Rule 8. Third, they assert that the City's Declaratory Judgment Act claim is duplicative

of its other claims.  And finally, they aver that each of Perry's state-law claims fails as a matter of law.  The Court addresses the issues of standing (as it must, *see, e.g.*, *Ross v. Bank of Am. N.A.*, 524 F.3d 217, 222 (2d Cir. 2008) ("Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." (internal quotation marks omitted))) and Rule 8 first, then turns to Defendants' other arguments.

**A.  Article III Standing and Rule 8**

Defendants' argument that Plaintiff lacks Article III standing can largely be rejected.  To ensure that federal courts resolve only "those disputes in which the parties have a concrete stake," Article III requires a plaintiff seeking relief to show an "injury-in-fact, that is, the invasion of a 'legally protected interest' in a manner that is 'concrete and particularized' . . . not 'conjectural or hypothetical.'"  *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "Injury in fact," however, "is a low threshold," which the Second Circuit has held "'need not be capable of sustaining a valid cause of action.'"  *Ross*, 524 F.3d at 222 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  Here, although the question is a close one, Plaintiff crosses that "low threshold" with respect to four of the six named Defendants.  Perry alleges that it has incurred costs from having to remove flushable wipes from its wastewater lift stations, sewer lines, and municipal buildings.  (FAC ¶¶ 7, 22, 39-42).  Perry further alleges that flushable wipes manufactured by Defendants Kimberly-Clark, P&G, Rockline, and Nice-Pak are available for sale in and around the City and that those Defendants dominate the market for such products.  (*Id.* ¶¶ 43-45, 86). Taking those allegations as true, as the Court must, it is plausible that at least some of Perry's damages were caused by flushable wipes manufactured by those four Defendants.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d Cir. 2011) (noting that for a party "to

have standing to sue, its alleged injury in fact must be *plausible*" (emphasis added)) (citing *Iqbal*, 556 U.S. at 678).  By contrast, the FAC includes no allegations about the availability or use in Perry of any flushable wipes manufactured by Defendants PDI or Tufco.  (*See* FAC ¶¶ 43-44, 79-80).  Thus, the claims against those two Defendants must be and are DISMISSED.  *See, e.g.*, *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63 (2d Cir. 2012) (holding that a plaintiff prove injury and standing separately with respect to each defendant).[3]

Admittedly, the arguments for dismissal of Plaintiff's claims against all Defendants are not without some force.  Defendants contend that Perry's allegations contain only generic complaints about flushable wipes, as opposed to evidence that the Defendants' own products caused any damage; that Perry fails to distinguish among the Defendants; and that other matter could have caused the clogs of which the City complains.  (*See* Defs.' Mem. Law Supp. Joint Mot. To Dismiss Pl.'s First Am. Class Action Compl. (Docket No. 97) ("Defs.' Mem.") 6-13; Defs.' Reply Supp. Joint Mot. To Dismiss Pl.'s First Am. Class Action Compl. (Docket No. 108) ("Defs.' Reply") 1-3).[4]  At the motion to dismiss stage, however, Perry's allegations of concrete injury to its water management systems (and its allegations that flushable wipes were at least partially responsible for the clogs), combined with its allegations about the availability and sale of Defendants' products, suffices to show an injury that is fairly traceable to Defendants'

---

[3]      In light of that disposition, references to "Defendants" throughout the rest of this Opinion and Order are to Defendants Kimberly-Clark, P&G, Rockline, and Nice-Pak.

[4]      Defendants also point out that a few of the products mentioned in the FAC are not marketed as "flushable."  (*See* Defs.' Mem. 3).  That point implicates only P&G (and an unnamed generic manufacturer), and Defendants concede that P&G produced other products marketed as "flushable."  (*See id.* at 3 ; FAC ¶¶ 43-44).  As for the products that come in both flushable and non-flushable form (*see* Defs.' Mem. 3 n.1), Perry may still have viable negligence or breach-of-warranty claims against Defendants for products that were sold interchangeably with flushable wipes and not sufficiently distinguished as non-flushable.

conduct.  *See Amidax*, 671 F.3d at 145 (noting that the plaintiff "bears the burden of establishing standing 'in the same way as any other matter on which [it] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." (quoting *Lujan*, 504 U.S. at 561)).  Put simply, this is not a case where the plaintiff's claims of injury are wholly speculative; instead, Perry points to a concrete injury and a likely cause of that injury. *Cf. Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) (dismissing claims that rested on the plaintiffs' "highly speculative fear" about a series of actions that the government may or may not decide to take); *Amidax*, 671 F.3d at 147 (rejecting a claim on standing grounds where the plaintiff relied "on a single conclusory statement from an anonymous source" in a newspaper article that was contradicted by other evidence in the record).

Furthermore, Defendants ignore the fact that Perry also seeks injunctive relief against *future* injury.  Defendants do not (and, at this stage, cannot) dispute that their products are sold in and around Perry, so there is a significant risk that their products could end up in the City's pipes even if they have not already.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155, 153 n.3 (2010) (finding that the plaintiffs had established sufficient injury-in-fact where they alleged that they faced a "significant risk" of genetic contamination from deregulated crops). Nor does the fact that other waste may be partially responsible for the clogs necessarily immunize each Defendants from liability for the contribution to the harm that its own products may have made.  *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) ("While it may be true that regulating motor-vehicle emissions will not by itself *reverse* global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to *slow* or *reduce* it."); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996) ("[T]he fairly traceable element does not require that the plaintiffs show to a scientific certainty that the

defendant's effluent, and the defendant's effluent alone, caused the precise harm suffered by the plaintiffs" (internal quotation marks omitted)).  Instead, the combination of flushable wipes found in Perry's water system clogs and the widespread availability of Defendants' flushable wipes products in and around the City makes the link between Defendants' conduct and Plaintiff's injury more than mere conjecture, crossing "the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Clapper*, 133 S. Ct. at 1154 (contrasting the "mere conjecture about possible governmental actions" in that case with the "concrete evidence to substantiate their fears" that had been presented by the farmers in *Monsanto*).

The Court's conclusion that Plaintiff has standing to bring its claims against Kimberly-Clark, P&G, Rockline, and Nice-Pak is consistent with the conclusions of courts that have ruled on motions to dismiss in other flushable wipes lawsuits around the country.  One court did dismiss on standing grounds (albeit giving the plaintiffs leave to amend) where the plaintiffs had failed to identify which brand of wipes they had purchased and used.  *See Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201-T-17EAJ, 2015 WL 5446797, at *3 (M.D. Fla. Sept. 15, 2015).  As a municipality, however, Perry plausibly alleges that it was harmed by any and all flushable wipes purchased and used in the City.  Other courts have dismissed claims for injunctive relief on the ground that the plaintiffs did not allege that they would purchase wipes in the future.  *See Machlan v. Procter & Gamble Co.*, 77 F. Supp. 3d 954, 960 (N.D. Cal. 2015); *Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014).  *But see Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (finding that the plaintiff had standing to pursue injunctive relief even though it was "unlikely" he would "re-purchase the product again").  But when it comes to claims for damages, courts have found that plaintiffs' allegations that they bought flushable wipes and then experienced toilet clogs are sufficient to confer standing.  *See,*

*e.g.*, *Sweeney v. Kimberly-Clark Corp.*, No. 8:14-CV-3201-T-17EAJ, 2016 WL 727173, at *2 (M.D. Fla. Feb. 22, 2016) (finding that the "evidence that the Plaintiffs had purchased and used both Defendants' wipes prior to experiencing plumbing difficulties, and that a three to four inch ball of wipes was removed from their plumbing system . . . , while far from conclusive regarding the issue of causation, gives rise to a reasonable inference that the Defendants' wipes, either individually or in the aggregate, were a cause of the Plaintiffs' plumbing damage"); *Machlan*, 77 F. Supp. 3d at 964 (rejecting P&G's argument that the plaintiff had failed to sufficiently allege that its wipes caused his clog when the plaintiff's complaint asserted that "[a]fter he unclogged the toilet, he noticed that the toilet paper had partially decomposed, but the wipes were completely intact").  The same is true here, at least at this early stage of litigation.

For similar reasons, Defendants' related Rule 8 arguments also fail.  Defendants characterize Perry's allegations in the FAC as "blanket and indiscriminate assertions" that run afoul of Rule 8's requirement that a plaintiff provide notice of its claims as to each of multiple defendants.  (Defs.' Reply 3).  The FAC, however, puts each remaining Defendant on notice as to the claims against it, and contains factual allegations specific to each Defendant.  *See Swierkiewicz*, 534 U.S. at 514 ("[P]etitioner's complaint easily satisfies the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims."); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 142-44 (S.D.N.Y. 2014) (collecting cases).  The FAC lists the specific products of each Defendant that are at issue (*see* FAC ¶¶ 43-44) and each Defendant's representations about the products to which Perry objects (*see id.* ¶¶ 49-78, 81-85).  To the extent that the FAC includes allegations about multiple Defendants at a time, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that

identical claims are asserted against each defendant." *Hudak v. Berkley Grp., Inc.*, No. 13-CV-89 (WWE), 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014).

## B. Declaratory Judgment Act

Next, Defendants contend that Perry's claim for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, should be dismissed as duplicative. (*See* Defs.' Mem. 15-16; Defs.' Reply 5-6). The Court agrees. A decision whether to award relief under the DJA lies within the discretion of the district court; in making that determination, a district court should consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The court may also weigh other factors, including "whether there is a better or more effective remedy" than the DJA. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003). Courts generally reject a DJA claim when other claims in the suit will resolve the same issues. *See, e.g.*, *U.S. Bank Nat'l Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12-CV-6811 (CM) (JCF), 2014 WL 998358, at *9-10 (S.D.N.Y. Mar. 14, 2014); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311-12 (S.D.N.Y. 2010).

In this case, Perry "seeks a declaration that the Defendants' flushable wipes are not in fact flushable, do not degrade, and cause harm to sewer systems." (FAC ¶ 114). But, if successful, Perry's other claims — for example, its breach-of-warranty claim, which calls for determination of whether Defendants' "affirmation[s] on the label that the wipes were 'Flushable' . . . 'degradable' and 'sewer and septic system safe'" were false — would provide that very relief. (FAC ¶¶ 117-18). Perry does not explain why its state-law claims "could be resolved without resolving the declaratory relief claim," nor why the possibility of class

11

certification warrants keeping the duplicative DJA claim.  (Pl.'s Opp'n 16).  Instead, the state-law claims "will necessarily settle the issues for which the declaratory judgment is sought," meaning that the DJA claim "will serve no useful purpose" and will not "serve to offer relief from uncertainty."  *Amusement Indus.*, 693 F. Supp. 2d at 311-12 (internal quotation marks omitted).  The better remedy for the relief Perry seeks is adjudication of its state-law claims.  Accordingly, the Court exercises its discretion and dismisses Count One of the FAC as duplicative.

## C.  Breach of Warranty

In the FAC, Perry asserts three breach-of-warranty claims: breach of express warranty (Count Two; *see* FAC ¶¶ 115-22); breach of implied warranty of merchantability (Count Three; *see* FAC ¶¶ 123-30); and breach of implied warranty of fitness for a particular purpose (Count Four; *see* FAC ¶¶ 131-36).  Although Defendants move to dismiss all three (Defs.' Mem. 16-21), Perry does not oppose their motion with respect to the breach of implied warranty of fitness for a particular purpose, so that claim is dismissed as abandoned, *see, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG)(FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."), and the Court focuses on the other two claims.[5]  Under Iowa law (which the parties agree applies (*see* Defs.'

---

[5]      In any event, Defendants' arguments for dismissal of Perry's claim for breach of the implied warranty of fitness for a particular purpose appear to be well founded.  (*See* Defs.' Mem. 20-21).  Iowa courts have held that for a particular-purpose claim, plaintiffs may not rely on the fact that the "ordinary use" of a product may be a specific one, but rather must allege knowledge on the part of the seller of the buyer's particular purpose.  *See, e.g.*, *Sec. Nat'l Bank of Sioux City v. Abbott Labs.*, No. 11-CV-4017 (DEO), 2012 WL 327863, at *18 (N.D. Iowa Feb. 1, 2012) ("Plaintiff admits the goods were used for their 'ordinary' or customary purpose . . . and, therefore, Plaintiff has no claim based in the implied warranty of fitness for a particular purpose."); *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 85-86 (Iowa 1984) ("We will not

Mem. 16-25; Pl.'s Opp'n 1, 16-25)), the elements of a claim for breach of an express warranty are (1) the existence of an express warranty; (2) reliance on any such warranty; (3) breach of any such warranty; and (4) damages proximately caused by the breach.  *See Nationwide Agribus. Ins. Co. v. SMA Elevator Constr. Inc.*, 816 F. Supp. 2d 631, 677 (N.D. Iowa 2011); *see also* Iowa Code § 554.2313 (defining express warranties).  To establish breach of an implied warranty of merchantability, on the other hand, a plaintiff must show that "'(1) a merchant sold the goods, (2) the goods were not merchantable at the time of sale, (3) injury or damage occurred to the plaintiff's property, (4) the defective nature of the goods caused the damage proximately and in fact, and (5) notice was given to the seller of the damage.'"  *The Conveyor Co. v. Sunsource Tech. Servs., Inc.*, 398 F. Supp. 2d 992, 1000 (N.D. Iowa 2005) (quoting *Renze Hybrids, Inc. v. Shell Oil Co.*, 418 N.W. 2d 634, 638 (Iowa 1988)); *see* Iowa Code § 554.2314.  Significantly, Section 554.2318 of the Iowa Code provides that "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty."  Iowa Code § 554.2318; *see also id.* § 554.1201(2)(aa) (defining "person" to include any "government, governmental subdivision, agency, or instrumentality, public corporation, or any other legal or commercial entity").

In light of the broad language of Section 554.2318, Defendants' first argument — that Perry may not sue for breach of warranty as a third-party beneficiary (*see* Defs.' Mem. 16-18) — is without merit.  Courts have held that the statute means what it says and that injured third parties may bring claims for breaches of warranties made to unrelated purchasers.  *See, e.g.*, *Sec.*

---

assume, as the plaintiffs suggest, that the seller had reason to know of the buyers' particular purpose, and their reliance on the skill and judgment of the seller, merely because [the product] is only usable for one purpose.").  Here, Perry makes no allegations about the particular purpose for which the buyers intended to use the products at issue, much less that Defendants knew about such a purpose at the time of sale.  (*See* FAC ¶¶ 131-36).

*Nat'l Bank*, 2012 WL 327863, at \*17 (holding that the parents of a child injured by baby formula sold to hospital could bring breach of warranty claim against the manufacturer of the formula); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 379 F. Supp. 2d 348, 402 (S.D.N.Y. 2005) (applying Iowa law and denying a motion to dismiss a breach of warranty claim on behalf of municipalities and other third-party beneficiary plaintiffs who were harmed by defendants' petroleum businesses); *Kolarik v. Cory Int'l Co.*, 721 N.W.2d 159, 163 (Iowa 2006) (holding that a remote buyer who chipped a tooth on an insufficiently pitted olive "falls within [Section 554.2318's] class of extended beneficiaries").  Given that case law and the allegations in the FAC, Perry plainly qualifies as a "person who may reasonably be expected to . . . be affected by the goods and who is injured by the breach of the warranty."  Iowa Code § 554.2318.

In arguing otherwise, Defendants mistakenly rely on an older, narrower version of the third-party beneficiary statute, which was limited to household members and guests.  (*See* Pl.'s Opp'n 17-18; Defs.' Mem. 16-17).  Defendants also cite *Cunningham v. Kartridg Pak Co.*, 332 N.W. 2d 881 (Iowa 1983), but that case is inapposite.  (*See* Defs.' Mem. 17).  There, the Iowa Supreme Court held that the shareholder of a company who had suffered economic loss as a result of the company's defective products was not within the class of injured third parties contemplated by the statute because he suffered only economic losses divorced from the defect of the products.  *See Cunningham*, 332 N.W. 2d at 885.  By contrast, Perry alleges that it suffered property damage as a direct result of the alleged defects in Defendants' products. Finally, Defendants' argument that Iowa law bars third parties from recovering consequential economic loss is irrelevant.  (*See* Defs.' Mem. 17-18).  That limitation applies only to *economic* loss, not to claims of injury to person or property.  *See, e.g.*, *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 107 (Iowa 1995) (holding that a remote buyer could not recover "because he

sustained only economic loss damages"); *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W. 2d 305, 309-310 (Iowa 1995) (discussing the difference between direct and consequential economic loss damages and holding that only the former can be recovered by nonprivity buyers); *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 129 (Iowa 1984) ("Section 554.2318 does not extend its warranty protection to third party beneficiaries who have suffered only economic loss, because the term 'injured' has been interpreted by this court to include only '*physical harm* to the plaintiff or his property.'" (quoting *Cunningham*, 332 N.W. 2d at 885)).  Here, of course, Perry seeks to recover for alleged property damage, not for economic losses.

Defendants' more specific arguments for dismissal of the express and implied warranty claims are also unpersuasive.  Defendants contend that the former claim must be dismissed because the FAC lacks allegations about specific sales, representations, or reliance by particular buyers.  (*See* Defs.' Mem. 18-19.)  The FAC adequately alleges, however, that Defendants' flushable wipes are sold in stores in and around Perry (*see* FAC ¶¶ 39-45) and that Defendants have made representations about their "flushable" nature and degradability.  (*See id.* ¶¶ 49-78; 81-85).  For example, the FAC alleges that P&G advertises its products on the label as "flushable" (*id.* ¶¶ 50, 52); that Kimberly-Clark's packaging says its "Flushable Cleansing Cloths break up after flushing" (*id.* ¶ 59); that Nice-Pak sells wipes with the promise that they are "safe for well-maintained sewer & septics" (*id.* ¶ 69); and that Rockline sells products that are promised to "break[] apart after flushing" (*id.* ¶ 82).  Such statements qualify as express warranties, which are "affirmation[s] of fact, promise, or description related to the goods [made] to the buyer of the goods."  *Sec. Nat'l Bank*, 2012 WL 327863, at *17 (citing Iowa Code § 554.2313).  And drawing all inferences in favor of Perry, such allegations are sufficient to show

that consumers who purchased the wipes would have done so at least in part because of Defendants' statements about the flushability of the wipes.  *See id.* ("Plaintiff alleges Defendant made a variety of express warranties at the time of its transaction with the hospital and included an express warranty on the container of the product; and, it is reasonable to infer that . . . the hospital, a sophisticated organization, would not have accepted the [product] and given it to their customers had they not also been so assured."); *see also Belfiore*, 311 F.R.D. at 38, 41 (noting that the plaintiff consumers in various class actions "allege that they paid a premium for 'flushable' wipes" in part because the wipes were advertised as "flushable").  Because Perry goes on to allege that the wipes were not, in fact, flushable or degradable and that it was harmed as a result, it states a claim for breach of express warranty under Iowa law.

Perry also states a claim for breach of the implied warranty of merchantability.  The Iowa Code defines merchantable goods, in part, as those that "are fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any."  Iowa Code § 554.2314; *see also, e.g.*, *The Conveyor Co.*, 398 F. Supp. 2d at 1000-1001 (discussing the interpretation of merchantability).  Defendants argue that Perry's implied-warranty claim fails because the City has not alleged that any consumer experienced harm from the wipes.  (*See* Defs.' Mem. 19-20).  As noted above, however, Perry may seek relief for its injuries as a third party, regardless of any harm to consumers.  And Perry plausibly alleges that the wipes were defective because they did not disintegrate when flushed, contrary to representations made by Defendant and arguably contrary to the ordinary purpose for which the goods are used.  That satisfies Perry's burden at this stage of the litigation.[6]

---

[6]    Defendants additionally contend that Perry cannot bring its warranty claims without alleging and proving consumer harm because a third-party "beneficiary can only enforce the same rights that the consumer has under the warranty."  (Defs.' Mem. 20 n.8).  The case they cite

## D.  Misrepresentation

Perry's fifth and sixth claims are for fraudulent and negligent misrepresentation, respectively.  (FAC ¶¶ 137-51).  Defendants move to dismiss both claims for failure to satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  (*See* Defs.' Mem. 21-23; Defs.' Reply 8-10).  There is no question that Rule 9(b), which provides that a plaintiff "must state with particularity the circumstances constituting fraud or mistake," applies to Perry's fraudulent representation claim.  Fed. R. Civ. P. 9(b); *see, e.g.*, *Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1113 (N.D. Iowa 2005) ("[F]raudulent misrepresentation . . . claims must be plead with the particularity required by Rule 9(b)." (collecting cases)).  Rule 9(b) "requires a plaintiff to adequately specify the statements it claims were false or misleading, give particulars as to the respect in which the plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."  *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 492 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (stating that plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so").

Perry's fraudulent misrepresentation claim fails to meet that standard.  In fact, the FAC identifies no specific statements, no specific speakers, and no specific consumers who heard or relied on those statements; instead, it lumps all Defendants together, accuses their products of

---

for that proposition, *Audio Odyssey, Ltd. v. United States*, 243 F. Supp. 2d 951 (S.D. Iowa 2003), holds that where a signatory to the contract *waives* any claim under the contract, the third-party beneficiary cannot bring its own claim by stepping into the shoes of the signatory.  *See Audio Odyssey*, 243 F. Supp. 2d at 969.  There is no such allegation here.  And the third-party beneficiary statute imposes no requirement that the consumer also be injured by the breach of warranty in order for an injured third party to sue; such an interpretation would undermine the broad protections provided by the statute.  *See* Iowa Code § 554.2318.

being generally misleading, and states that "consumers" generally relied on and were deceived by the misrepresentations. (*See* FAC ¶¶ 137-41). Although such allegations may have been enough to create reasonable inferences under Rule 8 for Perry's other claims, they are plainly insufficient to satisfy Rule 9(b)'s heightened pleading requirements, and Count Five is accordingly dismissed. *See, e.g.*, *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 877 (N.D. Iowa 2009) (dismissing a fraudulent representation claim where the plaintiffs failed to identify "who made the representation and to whom it was made, or when"); *Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1077-78 (N.D. Iowa 2006) (dismissing a claim of fraud for failure to plead justifiable reliance with particularity); *Wright v. Brooke Grp. Ltd.*, 114 F. Supp. 2d 797, 834 (N.D. Iowa 2000) (dismissing a fraudulent misrepresentation claim where the plaintiffs did not distinguish between defendants, used vague allegations, and did not specify a discrete time period for allegedly fraudulent statements).

By contrast, Perry's negligent misrepresentation claim survives because it is not subject to Rule 9(b). Under Iowa law, "misrepresentation based on negligent conduct has typically been addressed within the framework of a claim for negligence when the conduct has caused personal injury or property damage." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001) (citing Keeton, et al., *Prosser and Keeton on the Law of Torts* § 105, at 725-26, § 107, at 745 (5th ed. 1984)); *see Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 110 (Iowa 2012) ("When a negligent misrepresentation results in personal injury or property damage, the claim is treated like any other negligence claim."). Here, Perry alleges property damage as a result of Defendants' negligent conduct. (*See* FAC ¶¶ 144-50). Accordingly, Perry's claim sounds in negligence, not fraud, and Rule 9(b) does not apply. *See McGraw v. Wachovia Secs., LLC*, 2009 WL 2949290, at *7 (N.D. Iowa Sept. 10, 2009) (holding that Rule 9(b) does not apply to a

negligent misrepresentation claim that sounds in negligence); *cf. Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254-55 (S.D.N.Y. 2011) (noting that courts typically apply Rule 9(b) to negligent misrepresentation claims when they are based on the same set of facts as a fraud claim); *Brown v. N. Cent. F.S., Inc.*, 173 F.R.D. 658, 671-73 (N.D. Iowa 1997) (applying Rule 9(b) to fraud claims but not to negligent misrepresentation claims).  Subject to the less rigorous scrutiny of Rule 8, Perry's negligent misrepresentation claim passes muster, as the FAC alleges the elements of a negligence claim under Iowa law, namely "the existence of a duty to conform to a standard of conduct to protect others; failure to conform to that standard; proximate cause; and damages."  *Gremmels v. Tandy Corp.*, 120 F.3d 103, 105 (8th Cir. 1997) (citing *Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997)); *see Virden v. Betts & Beer Constr. Co.*, 656 N.W.2d 805, 807 (Iowa 2003) ("[T]he law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully will be dangerous to other persons or the property of other persons the duty to exercise his sense and intelligence to avoid injury." (internal quotation marks omitted)); *see also Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 449 (Iowa 1995) ("Negligence questions are typically for the jury and in only exceptional situations may negligence cases be decided by the court as a matter of law.").  Thus, Defendants' motion is denied with respect to Count Six.

### E.  Nuisance and Trespass

Finally, Defendants move to dismiss Perry's last two claims — for nuisance and trespass (framed as a claim for negligence *per se*), respectively — on the grounds that Perry relies on an impermissible theory of collective liability and cannot state a claim for nuisance once a product has left the seller's control.  (*See* Defs.' Mem. 23-25; Defs.' Reply 10).  The Court agrees that Perry's nuisance claim fails as a matter of law, albeit for a different reason: The parties do not

cite, and the Court is not aware of, any cases applying Iowa law that recognize a nuisance claim

arising out of the sale or use of a product as opposed to the use of property.  (*See* Pl.'s Opp'n 24-

25).  *Cf. Hawkeye Land Co. v. ITC Midwest LLC*, 125 F. Supp. 3d 885, 892 (N.D. Iowa 2015)

("Whether a lawful business is a nuisance depends on the reasonableness of conducting the

business in the manner, *at the place*, and under the circumstances in question." (emphasis

added)); *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006) ("Under the Iowa Code and under

common law, *the use of property or structures* in such a manner as to unreasonably interfere

with another's reasonable use and enjoyment of his property . . . is a nuisance." (emphasis

added)); *Page Cty. Appliance Ctr., Inc. v. Honeywell, Inc.*, 347 N.W.2d 171, 175 (Iowa 1984)

("One's *use of property* should not unreasonably interfere with or disturb a neighbor's

comfortable and reasonable use and enjoyment of his or her estate." (emphasis added)).  Notably,

interpreting analogous North Dakota law in *Tioga Pub. Sch. Dist. No. 15 v. U.S. Gypsum Co.*,

984 F.2d 915 (8th Cir. 1993), the Eighth Circuit drew that very distinction.  *See id.* at 920.  The

plaintiff, the Court stated, "has not presented us with any North Dakota cases extending the

application of the nuisance statute to situations where one party has sold to the other a product

that later is alleged to constitute a nuisance, nor has our research disclosed any such cases.  North

Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a

landowner or other person in control of property conducting an activity on his land in such a

manner as to interfere with the property rights of a neighbor."  *Id.*  Thus, the Court concludes

that, if confronted with the question, the Iowa Supreme Court would hold that a plaintiff may not

bring a nuisance claim based on the use of a product.  *See Brown Rudnick, LLP v. Surgical

Orthomedics, Inc.*, No. 13-CV-4348 (JMF), 2014 WL 3439620, at *13 (S.D.N.Y. July 15, 2014)

(noting that, where applicable state law is unsettled, a federal court's "task is to predict how the

state's highest court would resolve the question" and may consider, among other things, "the decisions of federal courts construing state law" (internal quotation marks omitted)).  It follows that Perry's nuisance claim must be and is dismissed.

Perry's final claim — for negligence *per se* — seeks to hold Defendants liable for a negligent or reckless violation of Iowa Code, Chapter 716, which provides criminal penalties for damage and trespass to property.  (FAC ¶¶ 157-164).  Perry provides no authority for the proposition that a party can be held liable for criminal trespass by allowing an object to enter the property of another (as opposed to entering property himself or herself) or for the proposition that a negligent violation of a criminal statute can constitute negligence *per se*.  (*See* Pl.'s Opp'n 23-25).  In fact, the Iowa Attorney General determined, with respect to an earlier version of the statute, that it would not be criminal trespass for a person's dog, but not the person himself, to enter upon another's property.  *See* Office of the Att'y Gen., State of Iowa, Op. No. 67-11-20, 1967 WL 167225 (Iowa A.G. Nov. 18, 1967).  That reading is consistent with the current version of the statute, which, in relevant part, defines trespass to require that the trespasser both "*[b]e[]* *upon or in property and* wrongfully . . . plac[e] thereon or therein anything animate or inanimate."  Iowa Code § 716.7(2)(a)(4) (emphasis added).  Accordingly, Defendants' motion to dismiss Counts Seven and Eight is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  In particular, all of Perry's claims against Defendants Tufco and PDI are dismissed, as are Perry's declaratory judgment (Count One), breach of implied warranty of fitness for a particular purpose (Count Four), fraudulent misrepresentation (Count Five), nuisance (Count Seven), and negligence *per se* (Count Eight) claims.  By contrast, Perry's

breach of express warranty (Count Two), breach of implied warranty of merchantability (Count Three), and negligent misrepresentation (Count Six) claims survive Defendants' motion.

Perry does not request leave to amend its Complaint for a second time, and the Court declines to grant such leave *sua sponte*.  Perry has already been granted one such opportunity. (*See* Docket Nos. 67, 78).  "[L]eave may be denied where amendment would be futile," and that appears to be the case here.  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  As to the two dismissed Defendants, Perry has already canvassed the available flushable wipes in the vicinity and has found none implicating either Tufco or PDI. Perry's DJA, nuisance, and trespass claims fail as a matter of law.  And as for the implied warranty of fitness for a particular purpose and fraudulent misrepresentation claims, there is no indication that Perry would be able to plead specific facts about interactions between Defendants and actual consumers that would cure the FAC's deficiencies; it was already unable to do so in its previous round of amendments.  (*See* Defs.' Mem. Law Supp. Joint Mot. To Dismiss Pl.'s Compl. (Docket No. 65) 19-23 (making similar arguments to dismiss the warranty and misrepresentation claims on the previous motion to dismiss)).  *See, e.g.*, *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming the district court's denial of leave to amend in part because of the previous opportunities that the plaintiff had received to amend the complaint). Finally, Perry was explicitly cautioned that it "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  (Docket No. 67).

In light of the foregoing, Defendants shall file their answers with respect to Perry's remaining claims by **June 9, 2016**, and the parties shall appear for an initial pretrial conference with the Court on **June 21, 2016**, at **3:45 p.m.** in Courtroom 1105 of the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York 10007.  In addition to the

matters referenced in the Notice of Initial Pretrial Conference (Docket No. 16), the parties should

be prepared to address at that conference (1) whether the case should be transferred to the

District of Iowa pursuant to Title 28, United States Code, Section 1404; (2) whether (and, if so,

how) the case should be consolidated (or at least coordinated) with *City of Wy., et al. v. Procter*

*& Gamble Co., et al.*, No. 15-CV-2101 (JRT) (D. Minn.); and (3) whether the case should be

stayed, pending proceedings before the FTC, for the reasons stated by Judge Weinstein in

*Belfiore*.  *See* 311 F.R.D. at 78-80.  The parties should include brief summaries of their

respective views on those issues in the joint letter that they are to submit by the Thursday prior to

the initial pretrial conference, as directed in the Notice of Initial Pretrial Conference.

   The Clerk of Court is directed to terminate Docket No. 96.


   SO ORDERED.

Date: May 19, 2016
   New York, New York

             JESSE M. FURMAN
            United States District Judge

23